# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.
                          No. CR 20-0327 JB
                          No. CR 19-0488 JB

JASON MONTES-CHAVEZ,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) United States v. Montes-Chavez, No. CR 20-0327 JB, Defendant's Sentencing Memorandum, filed January 6, 2022 (Doc. 76)("Montes-Chavez' Sentencing Memo."); and (ii) United States v. Montes-Chavez, No. CR 19-0488 JB, Defendant's Sentencing Memorandum, filed January 6, 2022 (Doc. 89)("Montes-Chavez' Sentencing Memo.").[1]   The primary issues are: (i) whether Defendant Jason Montes-Chavez' juvenile offenses are "prior sentences" pursuant to U.S.S.G. § 4A1.2(d)(2); and (ii) whether the United States Probation Office ("USPO") properly recommends for Montes-Chavez a Criminal History Category of IV.   The Court concludes that: (i) Montes-Chavez' juvenile offenses are prior sentences pursuant to U.S.S.G. § 4A1.2(d)(2) under United States Court of Appeals for the Tenth Circuit precedent and pursuant to § 4A1.2(d)(2)'s plain language; and (ii) Montes-Chavez' Criminal History Category is IV.

---

[1]United States v. Montes-Chavez, No. CR 20-0327 JB, and United States v. Montes-Chavez, No. CR 19-0488 JB, are related cases involving the same defendant, Defendant Jason Montes-Chavez.  Montes-Chavez filed identical sentencing memoranda in both cases.  The Court sentenced Montes-Chavez for a supervised release violation in No. CR 19-0488 JB, simultaneously with his sentence in No. CR 20-0327 JB.  The Court will refer to the identical memoranda collectively as "Montes-Chavez' Sentencing Memo."

## FACTUAL BACKGROUND IN SMUGGLING CASE

On October 8, 2018, a United States Border Patrol agent saw a vehicle pull to the side of the road near Alamogordo, New Mexico, and witnessed five individuals exit the vehicle before the vehicle proceeded to the border patrol checkpoint.  See United States v. Montes-Chavez, No. CR 19-0488, Presentence Investigation Report ¶ 11, at 4, filed May 1, 2019 (Doc. 41)("PSR I"). Montes-Chavez was driving the vehicle.  See PSR I ¶ 11, at 4.  Montes-Chavez told agents that he was en route to visit his father in Roswell, New Mexico, but agents noted that Montes-Chavez exhibited nervous behavior.  See PSR I ¶ 11, at 4.  In a secondary inspection, agents found several receipts from a Best Western hotel in Anthony, New Mexico, indicating that Montes-Chavez had rented two rooms, and several receipts indicating Montes-Chaves purchased twenty burritos and sixty dollars' worth of pizza.  See PSR I ¶ 12, at 4.  Agents also found 1.1 grams of cocaine wrapped inside a $100.00 bill.  See PSR I ¶ 23, at 4.  Agents detained Montes-Chavez to investigate his involvement in "an alien smuggling scheme."  PSR I ¶ 12, at 4.  Agents located the five individuals who exited the vehicle, and all five individuals admitted to being citizens of Honduras or Guatemala.  See PSR I ¶ 13, at 4.  Agents located three more individuals at the Best Western hotel who admitted that they each paid $2,000.00 to be smuggled into the United States.  See PSR I ¶ 13, at 4.

## PROCEDURAL HISTORY IN SMUGGLING CASE

On February 20, 2019, a federal Grand Jury charged Montes-Chavez with: (i) Count 1, conspiring with other persons to transport illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I); (ii) Count 2, knowingly and in reckless disregard of the fact that "J.M.C.G., an alien, had come to, entered and remained in the United States in violation of law," transported and attempted to transport J.M.C.G. within the United States, in violation of 8 U.S.C.

§§1324(a)(1)(A)(ii), (a)(1)(B)(ii), and (a)(1)(A)(v)(II); and (iii) Count 3, knowingly and in reckless disregard of the fact that "J.E.C.G., an alien, had come to, entered, and remained in the United States in violation of law," and transported and attempted to transport J.E.C.G. within the United States, in violation of §§1324(a)(1)(A)(ii), (a)(1)(B)(ii), and (a)(1)(A)(v)(II).  United States v. Montes-Chavez, No. CR 19-0488, Indictment, filed February 20, 2019 (Doc. 33).  On March 6, 2019, Montes-Chavez pled guilty pursuant to a Plea Agreement ¶ 3, at 2, filed March 6, 2019 (Doc. 39).  Montes-Chavez pled guilty to the Indictment's Count 1 for conspiring to transport illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).  See Plea Agreement ¶ 3, at 2.  On July 9, 2019, the Honorable Kenneth J. Gonzales, United States District Judge for the United States District Court for the District of New Mexico, sentenced Montes-Chavez to 12 months and 1 day's imprisonment to be followed by a 3-year supervised release term.  See United States v. Montes-Chavez, No. CR 19-0488, Judgment in a Criminal Case, filed July 9, 2019 (Doc. 45)("Judgment").  As a mandatory condition of supervised release, Montes-Chavez could "not commit another federal, state, or local crime."  Judgment ¶ 1, at 3.

## FACTUAL BACKGROUND IN POSSESSION CASE

On January 10, 2020, a New Mexico State Police officer stopped a vehicle driving 105 miles per hour in a 65 mile per hour zone.  See United States v. Montes-Chavez, No. CR 20-0327 JB, Presentence Investigation Report ¶ 6, at 3, filed November 19, 2021 (Doc. 72)("PSR II").  Montes-Chavez was driving the car.  See PSR II ¶ 6, at 3.  Montes-Chavez provided a false name and birth date to officers.  See PSR II ¶ 6, at 3.  An officer instructed Montes-Chavez to exit his car and place his hands on the car, and Montes-Chavez physically resisted.  See PSR II ¶ 7, at 3.  The officer drew his taser, instructed Montes-Chavez to comply, and, when Montes-Chavez continued to resist, the officer tased Montes-Chavez twice.  See PSR II ¶ 7, at 3.  Montes-Chavez

proceeded to re-enter his vehicle and drive away, which resulted in law enforcement pursuing him at a high-speed.  See PSR II ¶ 7, at 3.  During the pursuit, officers saw Montes-Chavez throw out of his window "two black colored packages", which officers later recovered, and which officers later determined contained 1,952.3 grams of cocaine.  PSR II ¶ 8, at 3.  Officers ultimately apprehended Montes-Chavez in Las Vegas, New Mexico, after using stop sticks to cause Montes-Chavez' car to come to a stop.  See PSR II ¶ 8, at 3.

**PROCEDURAL HISTORY IN POSSESSION CASE**

On January 29, 2020, a federal Grand Jury charged Montes-Chavez with one count of "unlawfully, knowingly, and intentionally possess[ing] with intent to distribute a controlled substance, and the offense involved 500 grams and more of a mixture and substance containing a detectable amount of cocaine," in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  United States v. Montes-Chavez, No. CR 20-0327 JB, Indictment, filed January 29, 2020 (Doc. 13).  On May 17, 2021, Plaintiff United States of America notified the Court that, in the related case, United States v. Montes-Chavez, No. CR 19-0488 JB, there is a pending Petition for Revocation of Supervised Release against Montes-Chavez, which is based on the same conduct for which Montes-Chavez is charged in United States v. Montes-Chavez, No. CR 20-0327 JB.  See Notice of Related Cases at 1, filed May 27, 2021 (Doc. 54).  On September 2, 2021, Montes-Chavez pled guilty to the Indictment for possessing with the intent to distribute at least 500 grams of cocaine. See United States v. Montes-Chavez, No. CR 20-0327 JB, Plea Minute Sheet at 1, filed September 2, 2021 (Doc. 69).

1. **The PSR.**

The USPO completed Montes-Chavez' PSR on November 19, 2021.  See PSR at 1.  The USPO calculates Montes-Chavez' base offense level to be 24.  See PSR ¶ 15, at 4.  The USPO

also recommends a 2-level enhancement pursuant to U.S.S.G. § 3C1.2 for obstruction of justice, because Montes-Chavez fled recklessly from a law enforcement officer, and a 2-level reduction pursuant to U.S.S.G. § 3E1.1(a), because Montes-Chavez accepts responsibility for the offense. See PSR II ¶¶ 19, 22 at 4-5.  The USPO also calculates Montes-Chavez' Criminal History Category as IV.  See PSR II ¶ 63, at 13.  The USPO assigns criminal history points for Montes-Chavez' juvenile convictions: (i) Conspiracy to Commit Residential Burglary in 2013 for 0 points; (ii) Possession of Burglary Tools in 2015 for 1 point; and (iii) Burglary of a Vehicle in 2015 for 2 points, see PSR II ¶¶ 25-27, at 5-7.  The USPO also assigns criminal history points for Montes-Chavez' adult criminal conviction: Conspiracy to Transport Illegal Aliens in 2018 for 2 points, see PSR II ¶ 28, at 7.  The USPO calculates that, based on his past convictions, Montes-Chavez has a criminal history score of 5, and recommends adding 2 additional points, because Montes-Chavez committed the current offense while under a criminal justice sentence in No. CR 19-0488 JB.  See PSR II ¶ 29-30, at 8.  The USPO calculates, therefore, that Montes-Chavez has a criminal history score of 7, which establishes a Criminal History Category of IV.  See PSR II ¶ 31, at 8.  Based on his total offense level of 24, and a Criminal History Category of IV, the USPO recommends that the corresponding United States Sentencing Guidelines ("Guidelines") imprisonment range is 77 to 96 months.  See PSR II ¶ 63, at 13.

  2. **The United States' Sentencing Memo.**

  The United States filed a Sentencing Memorandum on January 4, 2022.  See United States' Sentencing Memorandum, filed January 4, 2022 (Doc. 75)("United States' Sentencing Memo."). In the United States' Sentencing Memo., the United States notes: "Neither party has objected to the PSR's guideline calculation."  United States' Sentencing Memo. at 4.  The United States further

notes: "The PSR correctly establishes a total offense level of 24 and a criminal history category of IV."  United States' Sentencing Memo. at 4.

    **3.**    **<u>Montes-Chavez' Sentencing Memo</u>.**

Montes-Chavez filed his Sentencing Memo. on January 6, 2022, on the eve of his sentencing.  <u>See</u> Montes-Chavez' Sentencing Memo. at 1.  In his Sentencing Memo., Montes-Chavez objects to two calculations in the PSR.  <u>See</u> Montes-Chavez' Sentencing Memo. at 2.  First, Montes-Chavez contends that, "under the plain language of Section 4A1.2(a)[,] the two juvenile offenses in Paragraph 26 and 27 [of the PSR] do not count as 'prior sentence[s]' because Mr. Montes-Chavez did not plead guilty to a criminal offense . . . and no court entered an adjudication of guilt for these offenses."  Montes-Chavez' Sentencing Memo. at 2 (no citation for quotation)(alterations added).  Montes-Chavez asserts that he did not plead guilty to a criminal offense, but admits that he came within the jurisdiction of the New Mexico Second Judicial District Children's Court and acknowledges that the Juvenile Court made a finding that Montes-Chavez was a delinquent child.  <u>See</u> Montes-Chavez' Sentencing Memo. at 2.  Second, Montes-Chavez "objects to a Criminal History category of IV and argues pursuant to section 4A1.3(b) that reliable evidence indicates that his Criminal History Category over-represents the seriousness of his prior criminal conduct."  Montes-Chavez' Sentencing Memo. at 2.  Montes-Chavez contends that 3 of his criminal history points were from juvenile offenses, and 3 more points were added, because of "his single, prior conviction in federal court," and he argues that "none of his criminal history contains any overt act of violence."  Montes-Chavez' Sentencing Memo. at 2.

Montes-Chavez acknowledges that the Guidelines provide for the USPO to assess juvenile cases for criminal history points pursuant to U.S.S.G. § 4A1.2(d).  <u>See</u> Montes-Chavez' Sentencing Memo. at 6.  Moreover, Montes-Chavez acknowledges that the United States Court of Appeals for

the Tenth Circuit "has sanctioned the use of juvenile offenses to calculate criminal history points for almost thirty years."  Montes-Chavez' Sentencing Memo. at 6 (citing United States v. Miller, 987 F.2d 1462, 1466 (10th Cir. 1993)).  Montes-Chavez argues that his prior juvenile offenses are not, however, prior sentences, because "the sentence was not imposed upon an adjudication of guilt or a plea of guilty."  Montes-Chavez' Sentencing Memo. at 6.  Moreover, Montes-Chavez asserts that the juvenile justice system's purpose is rehabilitative and that juveniles admit they committed a criminal offense, which brings them within the Children's Court's jurisdiction as a delinquent child.  See Montes-Chavez' Sentencing Memo. at 6 (citing N.M.S.A. § 32A-2-2(A)). Montes-Chavez also argues that the New Mexico Children's Code's purpose "is, in part, to spare children the stigma of being labeled a 'criminal' and to remove children from the adult consequences of their criminal behavior."  Montes-Chavez' Sentencing Memo. at 7 (no citation for quotation)(citing New Mexico Juvenile Justice Handbook: A Legal Manual on Deliquency, Univ. N.M. Institute of Public Law at 1-3 (2011)).  Montes-Chavez acknowledges, however, that the Tenth Circuit, in an unpublished decision, rejects the argument that juvenile proceedings do not count for criminal history points where there is no formal adjudication of guilt.  See United States v. Lake, 198 F. App'x 788, 791 (10th Cir. 2006)(unpublished).[2]    Montes-Chavez

---

[2]United States v. Lake is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

nevertheless argues that assigning criminal history points to his juvenile offenses "would be inconsistent with the plain language of section 4A1.2(a) and the rehabilitative purposes of the New Mexico juvenile laws." Montes-Chavez' Sentencing Memo. at 7 (citing United States v. Lake, 198 F. App'x at 791).

Next, Montes-Chavez argues that the Court should grant Montes-Chavez a downward departure pursuant to U.S.S.G. § 4A1.3(b), because Montes-Chavez' criminal history category "over-represents the seriousness of the Defendant's prior criminal conduct or the likelihood of recidivism." Montes-Chavez' Sentencing Memo. at 8. Montes-Chavez argues that his criminal history score overrepresents the seriousness of his prior conduct, because 3 of his criminal history points are for juvenile offenses, and 3 are for a prior federal offense. See Montes-Chavez' Sentencing Memo. at 8. Montes-Chavez contends that none of his prior convictions "involve either the use of force or the attempted use of force." Montes-Chavez' Sentencing Memo. at 8. Montes-Chavez argues, therefore, that a Criminal History Category III "would be more appropriate." Montes-Chavez' Sentencing Memo. at 8.

**4.    The USPO's Addendum.**

The USPO filed an Addendum to the Presentence Report, filed January 6, 2022 (Doc. 77)("PSR Add."). The USPO asserts that U.S.S.G. § 4A1.1(c) n. 3 states that a juvenile sentence counts for criminal history points if it is imposed within five years of the current offense. See PSR Add. at 1. The USPO notes that Montes-Chavez was adjudicated as a delinquent for Possession of Burglary Tools on July 8, 2015, and was adjudicated as a delinquent for Burglary of a Vehicle

---

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Lake has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

and Larceny on November 1, 2016.  See PSR Add. at 1.  The offense for which the Court will sentence Montes-Chavez occurred on January 10, 2020, therefore, both of Montes-Chavez' juvenile offenses occurred within five years of the instant offense.  See PSR Add. at 1.  The USPO concludes, therefore, that Montes-Chavez' criminal history calculation is correct, and Montes-Chavez' criminal history category is IV.  See PSR Add. at 1.  In response to Montes-Chavez' second objection, the USPO notes that, because Montes-Chavez' "criminal history points remain unchanged at this time, the defendant is currently categorized in criminal history category IV." PSR Add. at 2.  The USPO also notes: "The Court may take into . . . consideration the defendant's criminal history and the types of convictions and/or arrests associated with him when determining the appropriate sentence."  PSR Add. at 2.

     **5.**     **Sentencing Hearing.**

     The Court held a Sentencing Hearing on January 7, 2022.  See Clerk's Minutes at 1, filed January 7, 2022 (Doc. 78).  At the hearing, the Court indicated that, under Tenth Circuit precedent, juvenile offenses may be used to calculate a defendant's criminal history category pursuant to U.S.S.G. § 4A1.2(d)(2).  See Draft Transcript of January 7, 2022, Hearing at 4:22-5:5 (taken January 7, 2022)(Court)("Tr.").[3]  The Court gave Montes-Chavez an opportunity argue in support of his objections.  See Tr. at 5:15-16 (Court).  First, Montes-Chavez acknowledged that the Tenth Circuit's decision in United States v. Miller, 987 F.2d 1462, binds the Court, and that United States v. Miller indicates that juvenile offenses may be counted when calculating a defendant's criminal history pursuant to § 4A1.2(d)(2).  See Tr. at 5:17-24 (Pori).  Nevertheless, Montes-Chavez argued

---

     [3]The Court's citations to the draft transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

that the Tenth Circuit should reverse its decision in <u>United States v. Miller</u>.  <u>See</u> Tr. at 5:25-6:2 (Pori).  Montes-Chavez noted that "the purpose of the juvenile system is to avoid the stigma of criminal conviction and that's why juveniles are considered a delinquent child, not convicted of a criminal offense."  Tr. at 6:2-6 (Pori).  Moreover, Montes-Chavez argued that it is inconsistent with the purpose of juvenile law in New Mexico, which intends to "remove children from the adult consequences of [their] criminal behavior," to allow juvenile convictions to count towards criminal history calculations.  Tr. at 6:7-9 (Pori).  The United States responded by agreeing with the Court and Montes-Chavez that <u>United States v. Miller</u> binds the Court.  <u>See</u> Tr. at 8:2-4 (Mattei).  The United States also contended that, in <u>United States v. Lake</u>, 198 F. App'x 788, the Tenth Circuit rejected Montes-Chavez' argument.  <u>See</u> Tr. at 8:8-12 (Mattei).  The United States argued that "the guidelines don't require an adjudication of guilt in order for a juvenile adjudication to count . . . because . . . the focus is on the conduct and not terminology."  Tr. at 8:12-15 (Mattei).

Next, Montes-Chavez asked the Court to "consider departing down one criminal history category."  Tr. at 10:8-9 (Pori).  Montes-Chavez argued that "Mr. Montes-Chavez received 7 points for two criminal sentences, those two juvenile cases were consolidated for sentencing and he served one year on those two cases," and that he received 4 points for the alien smuggling case, "so you have an individual who has received 7 points for what are effectively only two criminal sentences."  Tr. at 10:14-21 (Pori).  Montes-Chavez also noted that "none of the conduct involved violent crimes" and that "much of the conduct can be explained by Mr. Montes-Chavez's youth."  Tr. at 10:21-25 (Pori).

The United States responded, stating that it opposes the request for a departure.  <u>See</u> Tr. at 11:19-21 (Mattei).  The United States argued that the Court agrees that Montes-Chavez' criminal history is calculated correctly, and that "the guidelines don't require any particular type of

adjudication or conviction in order for necessary cases to count." Tr. at 11:22-25 (Mattei). Moreover, the United States noted:

> With respect to the alien smuggling case and that counting for as [many] points as it does[,] that's both because of the nature of the sentence that was imposed and because of this new conduct where Mr. Montes-Chavez violated the terms of his supervised release and he was under a criminal justice sentence when he committed this offense.

Tr. at 12:3-9 (Mattei). The United States concluded by noting that "it's essentially a heartland criminal history and there is no reason for the Court to depart or vary based on the criminal history category that we ended up with." Tr. at 12:22-25 (Mattei). The Court noted that it did not think Montes-Chavez' criminal history category is significantly overrepresented, "given his age and the kind of crime that he committed in this case." Tr. 14:8-10 (Court). Moreover, the Court noted that it is also ruling on his supervised release violation and that it is possible to mitigate some of the severity in sentencing Montes-Chavez for that violation. See Tr. at 14:2-6 (Court). Consequently, the Court denied the request for the downward departure. See Tr. at 14:23-24 (Court).

## ANALYSIS

The Court will assign criminal history points for Montes-Chavez' juvenile offenses pursuant to U.S.S.G. § 4A1.2(d)(2), because binding Tenth Circuit precedent dictates that juvenile offenses should be used to calculate criminal history points. See United States v. Miller, 987 F.2d at 1466. In relevant part, U.S.S.G. § 4A1.2 states:

**(a)     Prior Sentence**

> (1)     The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense.

. . . .

**(d)     Offenses Committed Prior to Age Eighteen**

(1)     If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A1.1(a) for each such sentence.

(2)     In any other case,

(A)     add 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;

(B)     add 1 point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

U.S.S.G. § 4A1.2(a), (d).  Moreover, Application Note 7 to § 4A1.2(d) clarifies:

Attempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of records. Therefore, for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted.

U.S.S.G. § 4A1.2 cmt. n.7.     In United States v. Miller, the Tenth Circuit addresses whether a court properly calculates a defendant's criminal history by considering juvenile offenses.  The Tenth Circuit holds: "Juvenile convictions, other than for status offenses, may be used to add points to a defendant's criminal history category pursuant to § 4A1.2(d)(2)."  United States v. Miller, 987 F.2d at 1465 (citing United States v. Baker, 961 F.2d 1390, 1392-93 (8th Cir. 1992)).  The Tenth Circuit reasons that § 4A1.2(d)(2) "applies to offenses for conduct that is criminalized regardless of one's status, but which the defendant committed prior to age eighteen."  United States v. Miller, 987 F.2d at 1466.  Moreover, in an unpublished opinion, United States v. Lake, 198 F. App'x 788, the Tenth Circuit again considers whether a court properly can count juvenile offenses in

calculating a defendant's criminal history.  See 198 F. App'x at 791.  In United States v. Lake, the defendant argued that "juvenile adjudications in Wyoming are 'special proceedings' that do not involve any determination of guilt, and as such should not count toward the criminal history determination under the guidelines."  198 F. App'x at 790 (no citation for quotation).  The Tenth Circuit clarifies that U.S.S.G § 4A1.2(d)(2) "do[es] not require a determination of guilt."  United States v. Lake, 198 F. App'x at 791.  The Tenth Circuit emphasizes that § 4A.12(d)(2) "require[s] prior confinement, and for good reason: states label their juvenile proceedings in different ways. A number of states continue to treat juvenile adjudications as civil matters.  Many, like Wyoming, avoid using the terms 'guilt' and 'innocence.'  Accordingly, the guidelines focus on conduct rather than terminology."  United States v. Lake, 198 F. App'x at 791 (no citation for quotation).  The Tenth Circuit then notes that "Congress did not intend the guidelines to treat juveniles accused of the same crime and with otherwise identical criminal histories differently from each other simply because different states call their juvenile proceedings by different names."  United States v. Lake, 198 F. App'x at 791 (citing United States v. David A., 436 F.3d 1201, 1213 (10th Cir. 2006)).  In United States v. David A., 436 F.3d 1201, the Tenth Circuit considers whether a juvenile adjudication in New Mexico, which does not result in a determination of guilt, nevertheless satisfies 18 U.S.C. § 5302's requirement that a defendant "has previously been found guilty" of another offense.  18 U.S.C. § 5302.  See United States v. David A., 436 F.3d at 1212.   In determining that juvenile delinquency adjudications satisfy § 5302's requirement that the defendant previously has been found guilty of another offense, despite juvenile adjudications in New Mexico not resulting in a determination of guilt, the Tenth Circuit states:

> "The sheer number of states that do not hold juveniles criminally 'guilty' for crimes renders [David A.'s proffered] construction of § 5032 [that it applies only to criminal convictions and not to juvenile delinquency adjudications]

unworkable.  It seems very unlikely that Congress would create a special statute permitting the Government to treat juvenile offenders as adults in federal court and then except from the statute's reach a number of juvenile offenders solely because state law denominates their prior delinquency determinations as 'adjudications' rather than 'convictions.'  [The proffered] construction of the statute leads to an anomalous result: juvenile offenders accused of the same crime, and with identical previous criminal records, would be treated differently under federal law depending on whether the juvenile's previous crimes occurred in a state that 'convicts' juvenile offenders, or one that 'adjudicates' them delinquent.  That could not have been Congress' intent."

United States v. David A., 436 F.3d at 1212-13 (quoting United States v. NJB, 104 F.3d 630, 637 (4th Cir. 1997)).

Montes-Chavez argues that the Court should not assign criminal history points for Montes-Chavez' juvenile offenses pursuant to U.S.S.G. § 4A1.2(d)(2), because the plain language of U.S.S.G. § 4A1.2(d)(2) requires an adjudication of guilt for a prior offense to count for criminal history points.  See Montes-Chavez Sentencing Memo. at 6.  At the outset, the Court notes that it Tenth Circuit precedent in United States v. Miller, which holds that juvenile offenses should be assigned criminal history points under § 4A.1.2(d)(2), binds the Court, and Montes-Chavez concedes that this Tenth Circuit precedent binds the Court.  See United States v. Miller, 987 F.2d at 1466; Tr. at 5:17-24 (Pori).  The Court also notes, however, that it does not see good reason to vary from the Tenth Circuit's decisions in United States v. Miller and United States v. Lake.  See United States v. Miller, 987 F.2d at 1466; United States v. Lake, 198 F. App'x at 791.  Reading § 4A1.2(d) in conjunction with § 4A1.2(d) cmt. n.7, the relevant inquiry for a district court is whether a defendant committed a prior offense that resulted in imprisonment or confinement, and not whether a juvenile was adjudicated guilty in a criminal court.  See U.S.S.G. § 4A1.2(d); U.S.S.G. § 4A1.2(d) cmt. n.7.  Moreover, the Tenth Circuit's reasoning in United States v. Lake persuades the Court that § 4A1.2(d)'s focus is on conduct rather than terminology.  United States

v. Lake, 198 F. App'x at 791. Among the fifty States, there is a vast array of juvenile adjudication schemes that treat adjudications and conduct differently, and New Mexico is not alone in declining to assign adjudications of guilt to juvenile offenders. See United States v. NJB, 104 F.3d at 637 (collecting states). It is unlikely that the United States Sentencing Commission would have intended § 4A1.2(d) to apply differently to juvenile offenders in different states, when one of the Sentencing Guidelines' very purposes is to promote uniformity in federal sentencing. Accepting Montes-Chavez' construction of § 4A1.2(d) would create sentencing disparities for similar conduct across the country based on individual States' juvenile adjudication schemes. The Court concludes that § 4A1.2(d) is more soundly read, as the Tenth Circuit does in United States v. Miller and United States v. Lake, to focus on juvenile conduct resulting in confinement rather than resting on the terminology of the States' juvenile adjudication systems. See United States v. Miller, 987 F.2d at 1466; United States v. Lake, 198 F. App'x at 791. Consequently, the Court will overrule Montes-Chavez' objection.

IT IS ORDERED that the objection in: (i) United States v. Montes-Chavez, No. CR 20-0327 JB, Defendant's Sentencing Memorandum, filed January 6, 2022 (Doc. 76), is overruled; and (ii) United States v. Montes-Chavez, No. CR 19-0488 JB, Defendant's Sentencing Memorandum, filed January 6, 2022 (Doc. 89), is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M.M. Uballez
  United States Attorney
Louis C. Mattei
  Assistant United States Attorney

United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Brian Pori
Law Office of Brian Pori
Albuquerque, New Mexico

    *Attorneys for the Defendant*